ALBERT R. SALMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Salman v. Commissioner
Docket No. 1105-80.
United States Tax Court
T.C. Memo 1982-592; 1982 Tax Ct. Memo LEXIS 150; 44 T.C.M. (CCH) 1354; T.C.M. (RIA) 82592; October 7, 1982. Albert R. Salman, pro se. Jeffry L. Millward, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Sec. 6653(b) [1]
Year
Deficiency
Addition to Tax
1976
$719.02
$359.51
1977
2,119.00
1,059.50
*151 After concessions, the issues remaining are (1) the amount, if any, of petitioner's unreported tip income, (2) the deductibility of certain expenses for dry cleaning and tailoring, and (3) whether any underpayment was due to fraud. FINDINGS OF FACT Some of the facts are stipulated and found accordingly. Petitioner, Albert R. Salman, resided in Reno, Nev., when he filed his petition herein. During part of 1976 and all of 1977, petitioner was employed as a dealer at Karl's Silver Club in Sparks, Nev. Dealers at that club participated in a tip-pooling arrangement whereby all tips received during a shift were shared equally by the dealers working that shift. In 1976 and 1977, petitioner worked 51 and 246 shifts, respectively. In both years, petitioner's shifts covered Monday, Tuesday, Friday, Saturday, and Sunday. Karl's Silver Club provided its employees convenient access to Internal Revenue Service booklets which contained instructions regarding the dealers' duty to report tips to employers and to include tips in gross income. These booklets also contained forms on which the dealers could report and maintain records of their tips. In 1976 petitioner neither reported *152 tips to Karl's Silver Club nor included tip income on his 1976 Form 1040. He did report tip income of $68.00 on Form 4137, Computation of Social Security Tax on Unreported Tip Income, which was attached to his 1976 return. Handwritten on the signature line of the 1976 return was the statement "This Form not signed because I am claiming my rights under the Fifth (5) Amendment to the Constitution." In 1977 petitioner once again failed either to report tips to Karl's Silver Club or to include tip income on his 1977 Form 1040. He filed with his employer a Form W-4 and a Form W-4E falsely claiming exemption from withholding for Federal income taxes. Petitioner filed a 1977 Federal income tax return which he left essentially blank except for his assertion of several frivolous constitutional arguments. Attached to the 1977 return was petitioner's Form W-2, Wage and Tax Statement. Respondent determined petitioner's tip income in 1976 and 1977 by utilizing information gathered from its surveillance of a Casino (herein the comparison casino) located across the street from Karl's Silver Club. The comparison casino and Karl's Silver Club were comparable in size and catered to similar *153 clienteles. Respondent determined that the average daily tip figure for a dealer working at the comparison casino ranged from $18.00 for the day shift to $24.00 for the swing shift. [2] The average daily tip figure was higher on weekends. Consequently, respondent determined petitioner's tip income by multiplying the number of petitioner's day shifts by $18.00 and the number of petitioner's swing shifts by $24.00. [3]
In 1976 petitioner incurred certain expenses for dry cleaning and tailoring in connection with ordinary men's clothing, including down jackets, and women's clothing. In his notice of deficiency, respondent determined petitioner had unreported tip income of $880.00 in 1976 and $5,904.00 in 1977, and respondent denied petitioner's deduction in 1976 of certain expenses for dry cleaning and tailoring. Respondent also asserted section 6653(b) additions to tax for both 1976 and 1977. OPINION The only issues for decision are (1) the amount, if any, of petitioner's *154 unreported tip income, (2) the deductibility of certain expenses for dry cleaning and tailoring, and (3) whether any underpayment was due to fraud. Tips and other gratuities are includible in gross income. , affg. a Memorandum Opinion of this Court; ; , affg. . When a taxpayer fails to keep records from which his tip income can be determined, respondent is entitled to reconstruct his income from tips. . Petitioner produced no records of his tips. His testimony that during 1976 he recorded his tips on a calendar was wholly uncorroborated. Respondent, therefore, was entitled to reconstruct petitioner's income from tips. Petitioner bears the burden of showing that respondent's determinations are erroneous. Rule 142(a). [4] For both years in issue, petitioner has failed to meet that burden. Petitioner presented no evidence contradicting respondent's determination of his 1977 tip *155 income. Petitioner's only challenge to respondent's determination of his 1976 tip income was his self-serving testimony that the tips he reported on his 1976 return "was the truth as far as I could ascertain". The $68.00 shown on the attached Form 4137 was the only tip income reported by petitioner in connection with his 1976 return. According to petitioner, such amount was derived from entries he made on a calendar which he failed to keep. We simply do not believe petitioner received only $68.00 in tips in 1976. Respondent's determinations, based on information derived from the comparison casino, are an appropriate measure of petitioner's tip income. Respondent determined that the average daily tip figure for a dealer working at the comparison casino ranged from $18.00 for the day shift to $24.00 for the swing shift. Petitioner primarily worked Fridays, Saturdays, and Sundays when the average daily tip figure was generally higher. Furthermore, the Director of Finance for Karl's Silver Club estimated that the average daily tip figure for dealers at Karl's Silver Club was about $40.00. Accordingly, *156 based on the record before us, we sustain respondent's determinations of petitioner's tip income. See . On his 1976 return petitioner claimed deductions for dry cleaning and tailoring expenses. Section 262 provides that no deduction shall be allowed for personal living expenses except as expressly provided to the contrary. Nothing in the record indicates that petitioner's dry cleaning and tailoring expenses were anything but personal expenditures. In fact, receipts submitted by petitioner indicate the expenses were incurred in connection with ordinary men's clothing, including down jackets, and certain items of women's clothing. Accordingly, we find that petitioner's dry cleaning and tailoring expenses were personal expenditures. See . There remains the issue as to whether all or any part of the underpayments for 1976 and 1977 were due to fraud within the meaning of section 6653(b). Respondent must prove by clear and convincing evidence that there has been intentional wrongdoing with the specific purpose of evading a tax believed to be owing. Rule 142(b); *157 , affd. . Because it is seldom possible to prove fraud by direct proof of intention, its proof may depend on reasonable inferences drawn from the evidence contained in the entire record. . Based on the record before us, we are convinced that petitioner engaged in a course of conduct designed to evade taxes he knew he owed for the years 1976 and 1977. Petitioner's first step was in failing to report tips to his employer. See sec. 6053. We believe petitioner was aware of his duty to report tips to Karl's Silver Club. Internal Revenue Service booklets which contained instructions concerning the dealers' duty to report tips to employers were made available in the personnel offices of Karl's Silver Club and at the pit podium where the dealers worked. These booklets also contained forms on which dealers could report and maintain records of their tips. It was the opinion of the Director of Finance at Karl's Silver Club that all dealers knew about these booklets. [5] Based on the record, we are certain petitioner *158 was aware of his duty to report tips to his employer. His failure to do so evidences a first step in connection with his efforts to evade taxes. The "returns" filed by petitioner in 1976 and 1977 are further manifestations of petitioner's wrongful course of conduct.[6] Petitioner did not report any tip income on his 1976 return, but he did report $68.00 of tip income on the Form 4137, Computation of Social Security Tax on Unreported Tip Income, which was attached thereto. This clearly indicates that petitioner knew his tips constituted returnable income. See . It is highly unlikely petitioner believed his tips were subject to Social Security taxes but not to Federal income taxes. In fact, petitioner never denied that he knew his tips were subject *159 to Federal income taxes. Rather, petitioner simply testified that he reported all of his tips on his 1976 return. We, of course, have found that petitioner grossly understated his income from tips. Large discrepancies between a taxpayer's actual income and the income reported on a tax return may be indicative of fraud when such discrepancies are unexplained. Due to petitioner's omissions, a substantial discrepancy exists between petitioner's actual income and that which was reported. In this regard, petitioner cannot attribute such discrepancy to a "belief" that his tips were included in his Forms W-2 since petitioner never reported tips to his employer. Furthermore, the manner in which petitioner filled out his 1976 and 1977 returns is certainly not indicative of a taxpayer who simply omitted income by mistake. Instead of signing his 1976 return, petitioner wrote "This Form not signed because I am claiming my rights to The Fifth (5) Amendment *160 to the Constitution". Although petitioner signed his 1977 return, he left that return blank except for his assertion of several frivolous constitutional claims. [7] The inference we draw from petitioner's frivolous constitutional claims asserted on his returns is that his omissions of tip income were intentional. Finally, in 1977 petitioner filed with his employer a Form W-4 and a Form W-4E falsely claiming that he was exempt from withholding for Federal income taxes. These filings were further steps in connection with petitioner's efforts to evade taxes. In conclusion, we are convinced petitioner fraudulently omitted tip income on his 1976 and 1977 returns. See Accordingly, we approve the additions to tax asserted by respondent. To reflect concessions and the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The "swing" shift extended from 7:00 p.m. to 3:00 a.m. ↩
3. The calculation for 1976 was reduced by the $68.00 of tip income shown on the Form 4137 which was attached to petitioner's 1976 return.↩
4. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
5. Although this witness did not begin working at Karl's Silver Club until 1977, we believe his opinion reflects on the dealers' awareness of the booklets in 1976 as well. His opinion was obviously based upon his knowledge of management policies and the everyday operations of the casino. There is no indication such policies or operations were different in 1976.↩
6. Because it is unnecessary to the determination of this issue, we make no finding as to whether petitioner's 1976 and 1977 "returns" were returns within the meaning of sec. 6011.↩
7. Petitioner's constitutional claims are totally without merit, and we are satisfied that petitioner knew they were without merit when he asserted them. See .↩